UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAYLA N. GIBSON,<br><br>  Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>  Defendant. | CASE NO. CV 17-4692 SS<br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

Shayla N. Gibson ("Plaintiff") brings this action seeking to overturn the decision of the Acting Commissioner of Social Security (the "Commissioner" or "Agency") denying her application for Disability Insurance Benefits. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 11-13). For the reasons stated below, the Court AFFIRMS the Commissioner's decision.

## II.

**PROCEDURAL HISTORY**

On November 26, 2013, Plaintiff filed an application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act alleging a disability onset date of January 1, 2011. (AR 130-31). The Commissioner denied Plaintiff's application. (AR 69-82). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on May 13, 2015. (AR 89, 36-68). The ALJ issued an adverse decision on March 7, 2016, finding that Plaintiff was not disabled because she was capable of performing her past relevant work as a case worker, receptionist, and secretary, and because there are also jobs in the national economy that she can perform. (AR 10-20). On April 25, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-9). This action followed on June 26, 2017.

## III.

**FACTUAL BACKGROUND**

Plaintiff was born on July 25, 1977. (AR 130). She was thirty-eight (38) years old when she appeared before the ALJ on February 3, 2017. (AR 40). Plaintiff is a college graduate. (AR 159). She is single and lives with her family. (AR 130, 165). Plaintiff last worked in 2010 as a case manager.[1] (AR 42). She alleges

---

[1] As discussed below, Plaintiff's date last worked is in dispute.

2

disability due to bilateral carpal tunnel syndrome and nerve damage in her hands and neck. (AR 158).

A.  **Plaintiff's Statements And Testimony**

In a February 2014 Function Report, Plaintiff asserted that her impairments restrict her ability to grab and grasp items. (AR 165). Her hands cramp while writing, she drops things, and she has pain in her finger tips, neck, and left arm. (AR 165). She is able to care for her children and her pets. (AR 166). Plaintiff is able to drive and shop for household items. (AR 168). Nevertheless, she contends that her impairments limit her ability to lift, stand, walk, sit, reach, finger, concentrate, and complete tasks. (AR 170). She cannot lift more than five pounds. (AR 170). In October 2014, Plaintiff denied the use of any medications, including over-the-counter medicines. (AR 212).

At her February 2016 hearing, Plaintiff expressed confusion about when she stopped working, acknowledging that she may have worked in 2011 and 2012, despite claiming disability beginning in January 2011. (AR 38, 40-42). She testified being unable to work due to carpal tunnel syndrome. (AR 46). Despite having surgery on both wrists, Plaintiff asserted that she has numbness and tingling in her hands and wrists that has spread to her elbows and up to her neck. (AR 46, 51). She cannot sit or stand for long before developing numbness and tingling. (AR 52). Physical therapy and home exercises have not relieved her symptoms. (AR 47). Despite continuing pain in her neck, right side, and both

3

hands and elbows, Plaintiff denied seeking any treatment during 2015, stating that she "didn't know [she] could." (AR 49-50, 58).

Plaintiff testified that she is able to care for her children, ages eight, nine, ten and twelve, including driving them to school, but relies on them to help prepare their meals, wash their clothes, and shop for food. (AR 53-55). She acknowledged being able to personally handwrite the eight-page Function Report, stating that it took her a while because her hand grew tired. (AR 55-56). She is able to lift a case of water. (AR 56).

B. **Treatment History**

On July 1, 2011, Plaintiff injured her hands, wrists, and shoulders while working as a case manager for Maximus Cal Works. (AR 416-17). In November 2011, Plaintiff reported that physical therapy sessions gave only minimal improvement, but she continued to work. (AR 417-18). She was still experiencing pain to her bilateral hands, wrists, and shoulders that improves with rest. (AR 417). Plaintiff's doctor diagnosed bilateral wrist tenosynovitis and bilateral shoulder strain, with a need to rule out bilateral carpal tunnel syndrome. (AR 425).

On November 14, 2011, electrodiagnostic testing indicated a right mild compression of the median nerve at the carpal tunnel. (AR 500). In January 2012, nerve conduction studies indicated left carpal tunnel syndrome and early right carpal tunnel syndrome, as well as possible right C6 radiculopathy. (AR 636, 642). In July

4

and October 2013, Plaintiff underwent bilateral carpal tunnel releases. (AR 745-46, 783, 786).

Plaintiff was evaluated on several occasions between November 2012 and December 2014 by Andre Chaves, M.D. a workers' compensation Qualified Medical Examiner. (AR 790-807). In March 2014, he diagnosed status post bilateral carpal tunnel releases and questionable bilateral cubital tunnel syndrome. (AR 792). On examination, he found full, unimpeded range of motion in flexion and extension of all digits, wrists and elbows without limitation. (AR 791). Dr. Chaves opined that Plaintiff is able to perform keyboard activities so long as they do not exceed thirty minutes per hour. (AR 792). He precluded Plaintiff from repetitive wrist motion, repetitive forceful gripping, and grasping with both hands. (AR 792). In his December 2014 report, Dr. Chaves confirmed bilateral carpal tunnel syndrome based on clinical testing. (AR 806).

On March 31, 2014, John Sedgh, M.D., performed an Internal Medicine Consultation examination, at the request of the Agency. (AR 621-26). He noted a positive "Tinel's sign" in both hands, but his neurological examination was unremarkable, and Plaintiff exhibited a normal range of motion at her wrists. (AR 624-25). Dr. Sedgh opined that Plaintiff can lift or carry twenty pounds occasionally and ten pounds frequently; stand and walk or sit for six hours during an eight-hour workday; occasionally kneel, crouch, and stoop; and occasionally use gross and fine manipulation with either hand. (AR 625-26).

**C.   State Agency Consultant**

On April 17, 2014, Brett Alberty, M.D., a state agency consultant, reviewed all the available evidence in the medical file. (AR 70-82). Dr. Alberty found that Plaintiff was limited to occasionally lifting twenty pounds and frequently ten pounds; standing and walking or sitting six hours in an eight-hour workday; with no manipulative or kneeling limitations; and occasionally stooping, crouching, and crawling. (AR 78-79).

**IV.**

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

|   |     |                                                                 |
|---|-----|-----------------------------------------------------------------|
| (1) | Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. |
| (2) | Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three. |
| (3) | Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four. |
| (4) | Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five. |
| (5) | Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled. |

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant

can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert ("VE"). Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**V.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 20). At step one, the ALJ declined to make a finding whether Plaintiff engaged in substantial gainful activity since January 1, 2011, the alleged onset date.[2] (AR 12). At step two, the ALJ found that Plaintiff's history of bilateral

---

[2] The record contains disputed evidence whether Plaintiff worked in 2011 or 2012. (AR 12). However, given the denial at both steps four and five, the ALJ "decline[d] to render a finding of substantial gainful activity at Step 1." (AR 12).

8

carpal tunnel syndrome post bilateral carpal tunnel release in 2013 and bilateral cubital tunnel syndrome are severe impairments. (AR 12-14). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (AR 14).

The ALJ then assessed Plaintiff's RFC and concluded that she can perform light work,[3] with the following nonexertional limitations: "[Plaintiff] can perform frequent handling, grasping, gripping and fingering with the bilateral upper extremities; she is unable to engage in keyboard use for more than 30 minutes in an hour; and she is limited to occasional overhead reaching with the bilateral upper extremities." (AR 14). At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a case worker, receptionist, and secretary.[4] (AR 18-19).

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

[4] The VE testified that Plaintiff was able to perform her past relevant work both as generally performed and as actually performed by Plaintiff. (AR 61). The ALJ, however, found that as a case worker, Plaintiff actually performed manipulative activities seven hours in an average workday, which exceeds the RFC. (AR 19). Therefore, the ALJ determined that Plaintiff is capable of performing her past relevant work as a case worker, receptionist,

9

Alternatively, based on Plaintiff's RFC, age, education, work experience and the VE's testimony, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including sorter, inspector, and electronics worker. (AR 19-20). Accordingly, the ALJ found that Plaintiff was not under a disability, as defined by the Social Security Act, from January 1, 2011, through the date of the decision. (AR 20).

## VI.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Garrison v. Colvin, 759 F.3d 995 (9th Cir. 2014) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)); Auckland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v.

---

and secretary as generally performed, and the secretary and receptionist work as actually performed. (AR 19).

Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Auckland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**VII.**

**DISCUSSION**

Plaintiff asserted that she is unable to work due to debilitating pain, numbness, and tingling in her bilateral hands and wrists, which sometimes radiates from her elbows to her neck. (AR 46, 51, 52, 165, 170). Plaintiff testified that her symptoms cause difficulty gripping, reaching, and prolonged writing. (AR 165, 170). She limits her daily activities, relying heavily on her four minor children for help with household chores. (AR 53-55).

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. Trevizo v. Berryhill, 874 F.3d 664, 678 (9th Cir. 2017).

First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Garrison, 759 F.3d at 1014. "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (emphasis in original) (citation omitted). "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Id. (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Trevizo, 874 F.3d at 678 (citation omitted); see also Smolen, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Garrison, 759 F.3d at 1015 (citation omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487,

493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ concluded that "the overall record fails to support the severity of symptoms and limitations alleged." (AR 15). He provided several specific, clear, and convincing reasons to find Plaintiff's complaints of disabling pain, numbness, and tingling in her bilateral hands and wrists not entirely credible. (AR 14-18). These reasons are sufficient to support the Commissioner's decision.

The ALJ noted that Plaintiff's subjective symptoms were inconsistent with her conservative course of treatment. (AR 15). "[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007)) (citation omitted); see Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999), as amended (June 22, 1999) ("Meanel's claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received."). Although alleging debilitating symptoms, Plaintiff admitted that she had

14

not received any medical treatment since July 2015, after settling her workers' compensation claim. (AR 47). Further, as early as October 2014, she reported using no medications, even over-the-counter medicines. (AR 212). "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006). Instead, Plaintiff used only home remedies, including exercises and heat. (AR 49-50). The lack of treatment records during the relevant period suggests that Plaintiff's symptoms were not as severe as she alleged. See Tommasetti, 553 F.3d at 1039-40 (ALJ may properly infer that claimant's pain "was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program"). Plaintiff testified that "she didn't know [she] could" seek additional treatment. (AR 58). The ALJ concluded however, that "[Plaintiff's] explanation makes little sense given the severity of symptoms alleged." (AR 15). The ALJ properly could find, after considering Plaintiff's sparse and conservative treatment history, that Plaintiff's testimony and statements regarding her disabling pain were not entirely credible.

The ALJ also found that Plaintiff's allegations were internally inconsistent. (AR 15). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012); see Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) ("ALJ may engage in ordinary techniques of credibility evaluation, such as . . . inconsistencies in

claimant's testimony"); accord 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). While Plaintiff claimed markedly limited bilateral hand and wrist use, she acknowledged at the hearing that she wrote the detailed, lengthy handwritten statements reflected in her Function Report and is able to lift a case of water. (Compare AR 165, 170, with id. 55-56; see id. 15). Further, Plaintiff reported to her physician being able to take care of her four small children alone and being able to "work out", meaning exercise at a gym. (AR 246). However, at her hearing, Plaintiff testified that she relies on her four minor children for significant help with household chores. (AR 53-55).

Plaintiff contends that the ALJ ignored that while she is "able to perform activities of daily living she is only able to do so for short periods of time and with difficulty." (Dkt. No. 19 at 8). "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison, 759 F.3d at 1016. Nevertheless, an ALJ properly may consider the claimant's daily activities in weighing credibility. Tommasetti, 533 F.3d at 1039. If a claimant's level of activity is inconsistent with the claimant's asserted limitations, it has a bearing on credibility. Garrison, 759 F.3d at 1016. Here, the ALJ determined that despite Plaintiff's alleged disabling difficulties with gripping, reaching, and prolonged writing, she acknowledged engaging in daily activities, including caring for her four minor children, lifting

a case of water, and exercising at a gym that were inconsistent with her alleged disabilities.

The ALJ also noted significant discrepancies among Plaintiff's statements regarding the temporal scope of her alleged disability. (AR 15). While Plaintiff alleged a disability onset date of January 1, 2011, she acknowledged at the hearing that she likely worked until December 2011. (Compare AR 130-31, with id. 38, 40-42). In March 2011, she reported to her primary care physician being engaged in "stressful work." (AR 246). In July 2011, Plaintiff filed a workers' compensation claim for a work-related injury to her hands, wrists, and shoulders while working as a case manager for Maximus Cal Works. (AR 416-17); see Bray, 554 F.3d at 1227 (upholding ALJ's credibility finding because claimant "recently worked as a personal caregiver for two years, and has sought out other employment since then"). Moreover, earnings records indicate 2011 earnings of $36,619.60, earnings which would be inconsistent with Plaintiff's claim of a disabling injury in 2011. (AR 153). "Even if the work [the claimant has] done was not substantial gainful activity, it may show that [the claimant is] able to do more work that [she] actually did." 20 C.F.R. § 404.1571.

Plaintiff contends that the ALJ failed to "consider [her] credible testimony." (Dkt. No. 19 at 9). To the contrary, the ALJ "gave some credence to [Plaintiff's] testimony of pain extending from her elbows to her neck." (AR 18). The ALJ limited Plaintiff to only "frequent handling, grasping, gripping and fingering with the bilateral upper extremities; she is unable to

17

engage in keyboard use for more than 30 minutes in an hour; and she is limited to occasional overhead reaching with the bilateral upper extremities." (AR 14). The RFC is consistent with the clinical findings of Drs. Chaves, Sedgh, and Alberty (AR 70-82, 621-26, 790-807), which Plaintiff does not contest. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (finding that the medical evidence, i.e., physicians' opinions that the claimant was able to perform a limited range of work, supported the ALJ's credibility determination).

In sum, the ALJ offered clear and convincing reasons, supported by substantial evidence in the record, for his adverse credibility findings. Accordingly, because substantial evidence supports the ALJ's assessment of Plaintiff's credibility, no remand is required.

## VIII.
## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: March 14, 2018

                                                              /S/
                                     SUZANNE H. SEGAL
                                     UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS OR ANY OTHER LEGAL DATABASE.**